**RODNEY S. DIGGS, ESQ. (SBN 274459)**
rdiggs@imwlaw.com
**LAURA N. JAMES, ESQ. (SBN 273720)**
ljames@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
**A Professional Law Corporation**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:  (213) 489-0552

Attorneys for Plaintiff, **EDMOND LAURENT**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND LAURENT,<br><br>    *Plaintiff,*<br><br>vs.<br><br>SEAN COMBS, an individual; JANE DOE 1, an individual; and DOES 2-10,<br><br>    *Defendants.* | CASE NO.: 2:25-cv-09495-GW(AGRx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**1. ASSAULT**<br>**2. BATTERY**<br>**3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**4. NEGLIGENCE**<br>**5. SEXUAL BATTERY**<br>**6. VIOLATION OF CALIFORNIA CIVIL CODE § 52.5**<br><br>**Filed Pursuant to Code of Civil Procedure Section 340.16, as amended by Assembly Bill 2777**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

Plaintiff Edmond Laurent brings this action to recover damages for drugging, sexual assault, non-consensual anal penetration, and exposure to sexually transmitted infections by Defendants Sean Combs and Casandra Ventura. Plaintiff suffered severe physical, emotional, and psychological injuries, including long-term

medical conditions.

## **PARTIES**

1.    Plaintiff Edmond Laurent is an individual residing in the State of California. At all relevant times, Plaintiff has suffered severe physical, emotional, and psychological harm due to the wrongful acts of Defendants. Plaintiff is an artist and entrepreneur who was subjected to systematic abuse, coercion, and exploitation by Defendants over an extended period, leading to significant long-term health and financial consequences.

2.    Plaintiff was an adult entertainer who performed under the name, "Islander."

3.    Plaintiff was employed by Latin Connection.

4.    Defendant Sean Combs ("Defendant Combs"), also known as "Puff Daddy," "Puffy," "Diddy," "P Diddy," "Love," and "Brother Love," is domiciled in the State of California and is a California citizen for purposes of diversity jurisdiction. Defendant Combs owns residential property located at 200 S Mapleton Dr, Los Angeles, CA 90024, where he maintained his primary residence during all relevant times when the assaults against Plaintiff occurred. Defendant Combs has conducted substantial business operations within California, including entertainment ventures, real estate investments, and other commercial activities. Following his federal conviction on July 2, 2025, in *United States v. Sean Combs*, Case No. 24-CR-00542 (S.D.N.Y.) ("Defendant Combs SDNY Criminal Trial"), Defendant

Combs is currently serving a term of imprisonment at the Metropolitan Detention Center (MDC) in Brooklyn, New York. His temporary incarceration in New York does not alter his California domicile or citizenship.

5.    Defendant Combs is a high-profile public figure, businessman, and music mogul who has significant financial resources and influence in the entertainment industry.

6.    At all relevant times, Defendant Combs leveraged his position of power and authority to manipulate, intimidate, and physically and emotionally harm Plaintiff, engaging in repeated acts of abuse, sexual misconduct, and coercion.

7.    Defendant Casandra Ventura ("Defendant Ventura"), professionally known as "Cassie," is a singer, actress, and model who gained prominence in the early 2000s. Upon information and belief, Defendant Ventura is a resident of San Diego County in California. Defendant Ventura conspired with and assisted Defendant Combs in the commission of the acts alleged herein.

8.    Defendant Does 2-10 are and at all relevant times herein residents of the State of California or were doing business in the State of California.

9.    Defendants Does 2-10 are persons whose identities are currently unknown to Plaintiff. These Defendants, upon information and belief, participated in, facilitated, aided, abetted, conspired, or otherwise contributed to the wrongful acts committed against Plaintiff. Plaintiff reserves the right to amend this Complaint to include the true names and capacities of Does 2-10 when they become known.

10.    At all relevant times, Defendants, and each of them, acted individually and in concert with each other, directly and indirectly engaging in the unlawful conduct alleged herein. Their collective actions contributed to Plaintiff's ongoing physical and psychological injuries, economic losses, and irreparable harm. Defendants' conduct was willful, malicious, and carried out with reckless disregard for Plaintiff's rights and well-being.

## JURISDICTION

11.    This Court has personal jurisdiction over the Defendants under and consistent with the Constitutional requirements of Due Process in that the Defendants, acting directly or through their agents or apparent agents, committed one or more of the following:

a.    The transaction of any business within the state;

b.    The making of any contract within the state;

c.    The commission of a tortious act within this District; and

d.    The ownership, use, or possession of any real estate in this state.

e.    All Defendants either do business and/or have a residence in the state of California, where the injury occurred.

12.    All injury to Plaintiff by Defendant Combs, Defendant Ventura, and the remaining Doe Defendants occurred in California.

13.    The sexual assaults and batteries took place in Los Angeles, California.

/ / /

## FACTS COMMON TO ALL CAUSES OF ACTION

### Plaintiff's Background and Career

14.    Plaintiff Laurent is a model, actor, bodybuilder, and fitness expert.

15.    Plaintiff was born on the island of Dominica in the French Caribbean. He migrated to the United States in the early 1990s to pursue acting and modeling in Los Angeles, California.

16.    Plaintiff took pride in his physique and was highly sought after for advice and consulting concerning fitness and healthy eating practices.

17.    In the 1990s and 2000s, Plaintiff was highly sought after to be in music videos with Tupac, Dr. Dre, Britney Spears, Lil Kim, Tamia, and other prominent artists, and made appearances in Baywatch with Pamela Anderson. He was routinely seen in photos with Oprah Winfrey, Ron Isley, and other prominent actors and entertainment heavyweights.

18.    Plaintiff rarely consumed alcohol and did not consume drugs.

19.    Plaintiff was friendly with Defendant Combs from prior interactions on music video shoots for Bad Boy Entertainment artists.

20.    In the late 2000s, Plaintiff was signed to a modeling and talent agency that provided him with opportunities to serve as an extra in films and video shoots.

21.    Plaintiff also received opportunities to appear at bachelorette parties as male entertainment.

/ / /

**Initial Contact and Recruitment**

22.     On one occasion, Plaintiff's agent called and informed him that he had received a bachelorette party appearance request in Los Angeles.

23.     The individuals that ordered his appearance did not disclose their true identity. When Plaintiff arrived at the Los Angeles hotel, he learned it was not a bachelorette party but a masked couple who wanted a private exotic dance.

24.     Seeing nothing wrong with the request, Plaintiff proceeded to dance for the couple. After the performance, he was paid and left.

25.     A few days later, Plaintiff received a call from Defendant Ventura to book his services and Plaintiff agreed to perform again.

26.     Upon Plaintiff's arrival the couple was once again wearing masks. After performing his dance, Defendant Ventura propositioned Plaintiff for sexual intercourse, marking the beginning of what Defendants describe as "freak-offs."

**Definition and Characteristics of "Freak-offs"**

27.     "Freak-offs" were regular occurrences throughout Defendant Combs and Defendant Ventura's almost decade-long relationship. Defendant Ventura testified that she and Defendant Combs participated in hundreds of freak-offs during that time. At times these were weekly occurrences.

28.     Defendant Combs and Defendant Ventura recruited and hired male escorts to perform a variety of sex acts at the direction and under the control of Defendant Combs and Defendant Ventura.

29.    Common patterns of freak-offs, as established by testimony in Defendant Combs SDNY Criminal Trial, included: (a) Defendant Ventura recruiting and contacting male escorts; (b) drug use including MDMA, GHB, and ketamine; (c) excessive use of heated baby oil; (d) Defendant Combs directing the sex acts, positioning, lighting, and giving real-time directions what he wants performed, and (e) violence.

30.    As part of the control and coercive environment Defendants maintained during freak-offs, Defendant Combs and Defendant Ventura would confiscate and retain Plaintiff's cellular telephone during these encounters, limiting his ability to freely depart or summon assistance. In addition, on one or more occasions, Defendant Combs physically positioned himself between Plaintiff and the door to prevent Plaintiff from leaving, blocking Plaintiff's ability to exit or escape.

31.    Freak-offs sometimes lasted multiple days and took a severe toll on the health of the participants. Defendant Ventura testified that following freak-offs, she experienced severe physical consequences including dehydration, sleeplessness, stomach issues, gastrointestinal problems, and urinary tract infections.

32.    Defendant Ventura's active role in recruiting and hiring Plaintiff for freak-offs is corroborated by her sworn testimony in Defendant Combs SDNY Criminal Trial. During her testimony, Defendant Ventura was presented with a binder of photographs that she identified as male escorts that she and Defendant Combs used for freak-offs. Defendant Ventura identified a photograph of an

7

individual, in the binder of male escorts, who she identified as "Islander" a male escort she and Defendant Combs hired from the site Latin Men for freak-offs in LA, and maybe Vegas. Further, Defendant Ventura testified that she primarily reached out to the escorts as part of her job.

33.     Upon information and belief, Defendants used various aliases to reserve hotel rooms for freak-offs, a pattern corroborated by testimony in Defendant Combs SDNY Criminal Trial that Defendant Combs "often stayed at [the Beverly Hills Hotel] under the name 'Frank Black' or 'Philip Pines'" and that a laptop belonging to Defendant Ventura "included a user profile for Frank Black, an alias used by Sean Combs."

**Initial Consensual Encounter and Pattern**

34.     Following Defendant Ventura's proposition that she and Plaintiff engage in sexual intercourse, Defendant Combs, who was still masked at the time, encouraged Plaintiff to proceed, remarking on how much pleasure he derived from watching another man "fuck" his girl. At this time, consensual intercourse was had with Defendant Ventura.

**First Drugging Incident**

35.     Defendant Combs and Defendant Ventura contacted and booked Plaintiff for an encounter at the Mondrian Hotel in Los Angeles.

36.     Defendant Combs offered Plaintiff a drink, which he tasted and quickly declined, informing them that at that time he did not want to consume alcohol.

37.    Defendant Ventura then offered Plaintiff cocaine, ecstasy, and GHB. Plaintiff declined, stating he did not use drugs.

38.    Defendant Combs and Defendant Ventura then left Plaintiff in the room and went to the master suite of their penthouse hotel room.

39.    Defendant Combs later returned and insisted that Plaintiff be on the same "frequency" as they were, demanding that he take at least one shot of alcohol to "lighten up." Plaintiff, reluctant but under pressure, obliged.

40.    Having rarely consumed alcohol before, Plaintiff quickly felt extremely woozy and lightheaded. Upon information and belief, Plaintiff believes that Defendant Combs and Defendant Ventura placed drugs in his drink.

**Second Drugged Incident**

41.    Months went by without contact until Defendant Ventura called Plaintiff and invited him to a hotel in Los Angeles for another encounter.

42.    During this encounter, Defendant Combs offered Plaintiff alcohol, ecstasy, and GHB, all of which he rejected.

43.    Defendant Combs instructed Plaintiff to apply an immense amount of baby oil. Upon applying the baby oil, Plaintiff began to feel warm and mellow. The baby oil was heated, and Plaintiff believed the warm sensation was a result of the heated baby oil. Unbeknownst to Plaintiff, and upon information and belief, Defendant Combs and Defendant Ventura infused the heated baby oil with GHB to facilitate his incapacitation.

44.     Plaintiff had sex with Defendant Ventura using a condom. During the Defendant Combs asked Plaintiff to remove his condom. Plaintiff refused despite Defendants producing what they claimed to be valid blood work results showing they were STD and STI free and falsely representing that Plaintiff was "the only other partner" Defendant Ventura had. Following Plaintiff's refusal, Defendant Ventura deliberately reached down and broke the condom with her fingernails as Plaintiff was penetrating her.

**Combs' Directing, Control, and Verbal Assault**

45.     Following the breaking of the condom, Defendant Combs came behind Plaintiff, leaned in closely and whispered in his ear in a low, suggestive tone, "Yeah, fuck that pussy," "Pound that pussy," with his voice deliberate and insistent, reinforcing the coercive atmosphere.

46.     Plaintiff felt increasingly trapped and uncomfortable, but due to the effects of the drugged baby oil and the situation he found himself in, he struggled to fully resist or leave despite his intent and attempts to do so, but was hindered by the drugs and the environment.

47.     During other encounters, Defendant Combs would instruct Defendant Ventura to perform oral sex on Plaintiff and when she did not perform it how Defendant Combs wanted, he would snatch Plaintiff's penis from Defendant Ventura and insert Plaintiff's erect penis into his mouth to mimic the movements he wanted to see without Plaintiff's consent.

**Final Assault**

48.    Plaintiff was then called back for what would be the final time. Defendant Combs once again offered Plaintiff alcohol, ecstasy, and GHB, which Plaintiff once again refused.

49.    Defendant Combs and Defendant Ventura left the room for an extended period of time and upon their return offered Plaintiff orange juice, representing they had ordered it to the room specifically for him since they knew he did not drink alcohol. Plaintiff, not thinking anything of it, drank the orange juice.

50.    Upon information and belief, Defendants spiked the drink with rohypnol and ketamine.

51.    Plaintiff recalls an intense and immediate reaction. His body felt unbearably hot, his vision blurred, and the room began to spin before he lost consciousness. What felt like only a few minutes to him was, in reality, several hours.

52.    When Plaintiff regained consciousness, he was lying naked on the bed, slathered in baby oil, and felt immense pressure and pain in his rectum, struggling to move and feeling weak and disoriented. Gathering what little strength he had, he attempted to dress himself and stumbled out of the hotel room while Defendant Combs and Defendant Ventura were asleep in the master suite, feeling violated, confused, and physically unwell.

53.    Plaintiff's experience parallels Defendant Ventura's own testimony

that GHB drug use during a freak-off would cause her to black out. In one such incident, she woke up nude in the shower unaware of what had happened to her.

54.    Upon information and belief, this assault took place at the Intercontinental Hotel. Upon information and belief, other assaults took place at the Beverly Wilshire and SLS Hotels in Los Angeles.

**Physical Injuries and Long-Term Harm**

55.    Following this assault Plaintiff experienced discomfort in his rectum and, as a heterosexual male who does not engage in homosexual acts, knew something was profoundly wrong.

56.    Weeks later anal warts appeared around the rim of Plaintiff's rectum and he was diagnosed with Condyloma.

57.    Upon information and belief, Defendant Combs was infected with Condyloma at the time of his assaults upon Plaintiff and was aware of his condition. Despite this knowledge, Defendant Combs concealed his infected status from Plaintiff and proceeded to sexually assault him. As a direct and foreseeable result, Plaintiff contracted Condyloma, an incurable sexually transmitted infection.

58.    The side effects of being drugged caused Plaintiff's body to have severe reactions. Plaintiff began vomiting uncontrollably to the point where he lost his ability to retain solid food or liquids, causing him to lose an immense amount of weight and muscle mass, further compounding the psychological and emotional trauma of what had transpired, and his once fit and muscular physique began to

deteriorate.

59.    Due to the severity of the gastric issues, Plaintiff ultimately had to undergo gastric surgery and has been diagnosed with stomach cancer.

60.    He has since lost several teeth due to the constant vomiting, with the acid from his stomach causing gum disease, enamel erosion, increased tooth sensitivity, cavities, bad breath, and gum irritation.

61.    Plaintiff suffered immediate and long-term physical and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), severe anxiety, depression, and medical complications resulting from the forced ingestion of unknown substances.

62.    The impact of date rape drugs on individuals who do not consume alcohol or use drugs are particularly severe, and Plaintiff, having no history of substance abuse, was particularly vulnerable to the physiological and psychological effects of narcotics, particularly date rape drugs such as Rohypnol (flunitrazepam), ketamine, GHB (gamma-hydroxybutyrate), and MDMA (ecstasy), suffering severe reactions that have been life-long.

63.    Plaintiff now seeks to hold Defendants accountable for the extensive harm inflicted upon him, demanding compensation for medical expenses, emotional distress, loss of income, and punitive damages to deter similar conduct in the future.

/ / /

/ / /

13

# FIRST CAUSE OF ACTION

## ASSAULT

### *(Against Defendants Combs and Ventura; DOES 2-10)*

64.    Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

65.    Defendant Combs and Defendant Ventura knowingly and deliberately orchestrated a campaign of intimidation and incapacitation designed to implant in Plaintiff a constant fear of imminent sexual and physical violence, including, but not limited to:

a.    <u>Surreptitious Drugging</u>: Placing Rohypnol, GHB, ketamine, and MDMA into Plaintiff's beverages and oil.

b.    <u>Verbal Coercion & Threats</u>: Defendant Combs directions and degrading commands left Plaintiff certain he would physically violate him if he resisted.

c.    <u>Physical Show of Force</u>: Positioning himself in the doorway and physically blocking any exit as Plaintiff regained partial awareness, reinforcing the immediacy of the threat.

d.    <u>Condom Sabotage</u>: Defendant Ventura's mid-act removal of the condom was a deliberate act to heighten Plaintiff's terror of permanent bodily harm.

66.    A reasonable, sober, and fit individual in Plaintiff's position would have believed imminent harmful contact was about to occur when the following

occurred:

a.    Total Incapacitation: Plaintiff, having seldom consumed alcohol or drugs, went from full control to near-complete incapacitation in minutes due to the involuntary drug ingestion—affirmatively inducing terror.

b.    Physical Entrapment: Defendant Combs and Defendant Ventura confiscated Plaintiff's phone and isolated him in a locked, penthouse suite, making escape impossible and amplifying his fear.

c.    History of Escalating Coercion: After multiple prior episodes involving unwanted touching and drugging, Plaintiff reasonably believed that violence would follow if he attempted to resist again.

67.    Plaintiff, a non-drinker and non-drug user, was placed in a state of extreme fear and vulnerability due to Defendants' repeated drugging, coercion, and sexual aggression. Given that:

a.    Plaintiff was surreptitiously drugged with substances known to cause memory loss, physical incapacitation, and extreme disorientation.

b.    Plaintiff was deliberately placed in an environment where he could not escape, further reinforcing his fear of immediate harm.

c.    Plaintiff was subjected to aggressive and repeated sexual coercion, culminating in physical violence, Plaintiff's apprehension of imminent harm was objectively reasonable and legally actionable.

68.    As a direct and proximate result of Defendants' actions, Plaintiff has

15

suffered the following:

a.    Severe emotional distress, including PTSD, anxiety, depression, and persistent fear.

b.    Physical injuries, including trauma from sexual violations, exposure to sexually transmitted infections, and the systemic damage caused by repeated drugging.

c.    Economic harm, including medical expenses, therapy costs, and loss of income due to the ongoing psychological and physical impact of Defendants' conduct.

d.    Defendants acted maliciously, fraudulently, and oppressively, warranting an award of punitive damages under *California Civil Code § 3294*. Their actions were willful, wanton, and demonstrated a conscious disregard for Plaintiff's safety and well-being.

69.    As a result of Defendants' conduct, and each of them, Plaintiff therefore seeks compensatory damages for severe physical, mental, emotional, and economic losses, punitive damages to punish Defendants and deter similar conduct, and injunctive relief to prevent Defendants from engaging in similar misconduct against other victims. Plaintiff will also be entitled to attorneys' fees and litigation costs pursuant to California law.

/ / /

/ / /

## SECOND CAUSE OF ACTION

## BATTERY

### *(Against Defendants Combs and Ventura; DOES 2-10)*

70.     Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

71.     Defendant Combs and Defendant Ventura each knowingly, willfully, and without consent committed multiple battery acts against Plaintiff, including:

a.     Adulterating Plaintiff's beverages and baby oil with Rohypnol, GHB, and ketamine—known incapacitating agents in drug-naïve persons—and groping, fondling, and manipulating Plaintiff's genitals and buttocks while he lay unconscious.

b.     Defendant Combs intentionally anally penetrated Plaintiff without consent.

c.     Defendant Ventura deliberately punctured and removed Plaintiff's condom during intercourse, knowing this would expose him to sexually transmitted infections.

d.     Defendant Combs forcibly inserted Plaintiff's erect penis into his mouth, an unwanted and offensive sexual touching.

e.     Plaintiff did not consent to any of the touching.

72.     Defendants falsely represented they had tested clean and concealed their Condyloma-positive status—an additional fraud factor negating any "consent."

73.     As a direct and proximate result of these battery acts, Plaintiff suffered: Anal fissures, internal bruising, and chronic gastrointestinal injury requiring gastric surgery and repeated hospitalization; Contracting Condyloma due to Combs' undisclosed infection and Defendant Ventura's condom sabotage; PTSD with medical diagnoses and treatment records, panic disorder, major depressive disorder, and suicidal ideation; economic loss due to not being able to work anymore due to his sickness.

74.     As a result of Defendants' conduct, and each of them, Plaintiff therefore seeks compensatory damages for severe physical, mental, emotional, and economic losses, punitive damages to punish Defendants and deter similar conduct, and injunctive relief to prevent Defendants from engaging in similar misconduct against other victims. Plaintiff will also be entitled to  attorneys' fees and litigation costs pursuant to California law.

## THIRD CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *(Against Defendants Combs and Ventura; DOES 2-10)*

75.     Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

76.     Defendants intentionally engaged in a sustained, premeditated campaign of psychological terror that amounted to extreme, severe, outrageous conduct including but not limited to:

a.  <u>Coerced Drugging and Deception</u>: Repeatedly lacing Plaintiff's food, beverages, and baby oil with Rohypnol, GHB, ketamine and MDMA, knowing he was a lifelong non-user—and falsely assuring him of safety.

b.  <u>Sexual Torture and Betrayal</u>: Forcing non-consensual sexual acts—anal infiltration of rectal tissue by Combs, mid-act condom sabotage by Defendant Ventura, forced oral contact, and orchestrated group assaults—all while Plaintiff was unconscious or semi-conscious.

c.  <u>Fraudulent Medical Deception</u>: Producing forged "clean" blood-test results, concealing Defendants' Condyloma-positive status, and falsely representing that Plaintiff was "the only partner," causing permanent disease transmission.

d.  <u>Entrapment & Isolation</u>: Seizing Plaintiff's phone, isolating him in penthouse suites under aliases, controlling hotel staff to clear all evidence, and allowing unauthorized sex workers access—creating an environment of inescapable fear.

e.  <u>Verbal Degradation and Threats</u>: Defendant Combs whispering graphic orders and threatening further harm if Plaintiff resisted, amplifying terror.

77.  Defendants knew or should have known that their conduct would cause grave physical, mental, and emotional distress to Plaintiff, particularly since Plaintiff would have an incurable disease.

78.  Defendant Ventura also specifically acted extremely and outrageously by luring Plaintiff into dangerous encounters under false pretenses, establishing a

pattern of deception.

79.    Defendant Ventura also acted extremely and outrageously by breaking Plaintiff's condom mid-intercourse to facilitate unprotected sex, stripping Plaintiff of his right to protect himself from STIs and unwanted physical contact.

80.    As a direct result of Defendants' conduct, and each of them, Plaintiff suffers from:

a.    Post-Traumatic Stress Disorder (PTSD) – daily intrusive flashbacks, panic attacks, hypervigilance, and dissociation, meeting DSM-5 criteria and corroborated by psychiatric expert reports;

b.    Major Depressive Disorder – persistent suicidal ideation, anhedonia, and debilitating hopelessness;

c.    Panic Disorder – recurrent, unexpected panic attacks triggered by sensory reminders;

d.    Physical Somatization – severe gastrointestinal disturbances, vomiting 5–8 times daily, and weight loss.

81.    As a result of Defendants' conduct, and each of them, Plaintiff therefore seeks compensatory damages for severe physical, mental, emotional, and economic losses, punitive damages to punish Defendants and deter similar conduct, and injunctive relief to prevent Defendants from engaging in similar misconduct against other victims. Plaintiff will also be entitled to attorneys' fees and litigation costs pursuant to California law.

# FOURTH CAUSE OF ACTION

## NEGLIGENCE

### *(Against Defendants Combs and Ventura; DOES 2-10)*

82.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

83.    All Defendants owed Plaintiff the duty to use reasonable care to avoid placing him in wrongful peril.

84.    Defendants Combs and Defendant Ventura owed a duty to refrain from drugging or physically harming Plaintiff.

85.    Both individuals had a duty to disclose known STI status before sexual activity.

86.    Where Defendants controlled access, security, and medical supplies (drinks, oils) within private suites, they stood in a special relationship to Plaintiff, further elevating their duty.

87.    Defendants breached these duties in multiple, independent respects:

a.    <u>Covert Drugging</u>: Employing Rohypnol, GHB, ketamine, and MDMA in drinks and baby oil—conduct violating the duty of care and Cal. Bus. & Prof. Code § 25602.

b.    <u>Non-Disclosure of STI</u>: Concealing an active Condyloma infection, falsifying blood reports.

c.    <u>Failure to Secure Premises</u>: Does 2-10 failed to exercise reasonable care

over their premises, facilitating the ongoing exploitation of Plaintiff.

d.    Inducement of Unsafe Acts: Pressuring Plaintiff to remove his condom under false promises of safety—counter to the duty to prevent foreseeable harm.

88.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe and lasting harm, including:

a.    Physical injuries, including the effects of involuntary drug ingestion, exposure to STIs, and damage to Plaintiff's digestive system leading to stomach cancer.

b.    Emotional distress, including PTSD, depression, anxiety, and severe psychological trauma from being drugged and sexually assaulted.

c.    Medical expenses, including hospitalization, STI treatments, cancer-related medical interventions, and long-term psychological therapy.

d.    Loss of income, as Plaintiff was unable to continue his career due to the psychological and physical impact of Defendants' actions.

89.    The breaches were both the but-for cause and a substantial factor in Plaintiff's injuries.

90.    The harm was reasonably foreseeable: drugging a sober non-user predictably produces incapacitation, sexual violence, and medical complications.

91.    As a result of Defendants' conduct, and each of them, Plaintiff therefore seeks compensatory damages for severe physical, mental, emotional, and economic losses, punitive damages to punish Defendants and deter similar conduct, and

injunctive relief to prevent Defendants from engaging in similar misconduct against other victims. Plaintiff will also be entitled to   attorneys' fees and litigation costs pursuant to California law.

92.    Defendants also violated statutes designed to protect against the precise harms suffered, including:

a.    Penal Code § 261(a)(3): Sexual assault via drugs.

b.    Health & Safety Code § 120290: Failure to warn of STI.

c.    Bus. & Prof. Code § 25602: Furnishing controlled substances to incapacitated persons.

93.    The violation of these laws directly led to Plaintiff's harm, reinforcing Defendants' liability under a theory of negligence per se.

94.    As a direct and proximate result, Plaintiff incurred:

a.    Severe Physical Injuries: Including gastric surgery, dental erosion, and chronic gastrointestinal damage.

b.    STI Transmission: Genital Condyloma requiring lifelong management.

c.    Emotional Trauma: PTSD, depression, and anxiety with documented treatment.

d.    Economic Losses: Exceeding $3 million in combined past and future medical costs, therapy, and loss of professional earnings.

95.    As a result of Defendants' conduct, and each of them, Plaintiff therefore seeks compensatory damages for severe physical, mental, emotional, and economic

losses, punitive damages to punish Defendants and deter similar conduct, and injunctive relief to prevent Defendants from engaging in similar misconduct against other victims. Plaintiff will also be entitled to  attorneys' fees and litigation costs pursuant to California law.

## FIFTH CAUSE OF ACTION

### SEXUAL BATTERY

### *(Against Defendants Combs and Ventura; DOES 2-10)*

96.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

97.    Defendants each committed repeated acts of sexual battery against Plaintiff, including:

a.    Drug-Facilitated Penetration: While Plaintiff was unconscious or semi-conscious from Rohypnol, GHB, ketamine, MDMA and alcohol, Defendant Combs anally penetrated Plaintiff—an intentional intimate touching without consent.

b.    Genital Groping: Both Defendant Combs and Defendant Ventura groped Plaintiff's genitals repeatedly while he lacked capacity to resist.

c.    Condom Tampering: Defendant Ventura punctured and removed Plaintiff's condom mid-act, exposing him to an incurable STI—acts of force and fraud that invalidate any ostensible consent.

d.    Unwanted Oral Contact: Defendant Combs used Plaintiff's erect penis for oral stimulation without consent, under instructions and intimidation.

98.     Defendant Combs engaged in direct and aggravated sexual battery by:

a.      Physically grabbing and groping Plaintiff's genitalia without consent.

b.      Anally penetrating Plaintiff while knowingly infected with Condyloma, thereby knowingly exposing Plaintiff to an incurable sexually transmitted infection.

c.      Using coercion, fraud, and intimidation to force Plaintiff into repeated sexual encounters.

99.     Defendant Ventura aided and abetted Defendant Combs in sexually battering Plaintiff by:

a.      Coercing Plaintiff into non-consensual intercourse, falsely representing that she was disease-free.

b.      Breaking the condom mid-intercourse, exposing Plaintiff to additional risk and depriving him of his right to safe, consensual sex.

c.      Assisting in the administration of incapacitating substances, ensuring Plaintiff was unable to resist.

100.    Plaintiff never consented to the rape, drugging, and intentional breaking of the condom, or to engage in any sexual acts with the STI-infected Defendants.

101.    During her testimony in Defendant Combs SDNY Criminal Trial, Defendant Ventura admitted to treating male escorts exploitatively, stating: "I can't carry the shame, the guilt... the way I was guided to treat people like they were disposable," and when asked "who are those people?" she testified: "Escorts,

everybody. Anybody," establishing that Defendant Ventura knowingly treated Plaintiff and other male escorts as "disposable" objects to be exploited for Defendants' sexual gratification.

102.   As a direct and proximate result of Defendants' sexual battery, Plaintiff suffered severe and ongoing damages, including:

a.   Physical injuries, including the effects of involuntary drug ingestion, exposure to an incurable STI, and anal trauma from non-consensual penetration.

b.   Severe emotional distress, including PTSD, depression, anxiety, and recurring nightmares.

c.   Medical expenses, including treatment for STI exposure, hospitalization for the effects of drugging, and long-term psychological therapy.

d.   Loss of income, as Plaintiff was unable to continue his career due to the psychological and physical trauma suffered.

103.   As a result of Defendants' conduct, and each of them, Plaintiff therefore seeks compensatory damages for severe physical, mental, emotional, and economic losses, punitive damages to punish Defendants and deter similar conduct, and injunctive relief to prevent Defendants from engaging in similar misconduct against other victims. Plaintiff will also be entitled to  attorneys' fees and litigation costs pursuant to California law.

/ / /

/ / /

## SIXTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 52.5

## (HUMAN TRAFFICKING)

### *(Against Defendant Combs, Defendant Ventura; DOES 2-10)*

104.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

105.    California Civil Code § 52.5(a) provides that a victim of human trafficking may bring a civil action for damages against any person who deprives them of their liberty through coercion, fraud, or force for the purpose of forced labor, sexual servitude, or commercial sexual exploitation.

106.    Defendant Combs and Defendant Ventura knowingly engaged in conduct that deprived Plaintiff of his liberty and subjected him to commercial sexual exploitation through coercion, fraud, and deceit.

107.    Defendants' actions meet the statutory definition of human trafficking, as they:

a.      Deceived Plaintiff into believing he was attending legitimate social or business engagements, only to later coerce him into sexual acts.

b.      Surreptitiously drugged Plaintiff with Rohypnol, Ketamine, GHB, and MDMA, rendering him incapacitated and unable to provide consent.

c.      Used manipulation, deception, and intimidation to pressure Plaintiff into engaging in sexual conduct against his will.

d.    Fraudulently concealed their sexually transmitted infection (STI) status, exposing Plaintiff to disease without his knowledge or consent.

e.    Financially benefited from Plaintiff's coerced sexual servitude, including by leveraging their power and influence to maintain control over him.

108.    Defendant Ventura acted as an active participant in the trafficking scheme by:

a.    Encouraging and assisting Defendant Combs in the coercion, drugging, and sexual exploitation of Plaintiff.

b.    Breaking Plaintiff's condom mid-intercourse to remove his ability to protect himself.

c.    Offering Plaintiff financial compensation to manipulate him into repeated encounters, despite knowing he was under duress.

109.    Defendant Combs used his position of wealth, fame, and power to exert psychological and physical control over Plaintiff, ensuring that he remained vulnerable and compliant.

110.    Defendant Ventura's role in the commercial sexual exploitation scheme is further established by her testimony that male escorts "were paid" between "$1,500 to five or six thousand dollars" and when asked "whose money was used to pay them?" she testified: "Sean's money," confirming her involvement in both recruitment and payment of male escorts as part of the broader sex trafficking enterprise, and her involvement in both recruitment and payment establishes her as

28

an active participant in the trafficking conspiracy.

111.    DOES 2–10, hotel operators, knew or were willfully blind to indicators of trafficking and drug-facilitated sexual assault occurring on their premises, including unauthorized guest access, alias bookings, and physical evidence of criminal activity observed by staff. Despite this knowledge, they actively facilitated the ongoing exploitation by instructing staff to remove evidence, allowing unregistered guests unsupervised access to private floors and amenities, and failing to report suspected trafficking to law enforcement as required by law. DOES 2–10 financially benefited from the continued exploitation. As a direct result, Plaintiff sustained the damages alleged herein.

112.    As a result of Defendants' conduct, and each of them, Plaintiff therefore seeks compensatory damages for severe physical, mental, emotional, and economic losses, punitive damages to punish Defendants and deter similar conduct, and injunctive relief to prevent Defendants from engaging in similar misconduct against other victims. Plaintiff will also be entitled to attorneys' fees and litigation costs pursuant to California law.

## **PRAYER**

WHEREFORE, PLAINTIFF EDMOND LAURENT prays for judgment against all DEFENDANTS, jointly and severally, as follows:

1.    For compensatory, special, and general damages according to proof;

2.    For punitive and exemplary damages;

3.     For attorney's fees;

4.     For costs of suit, pre-judgment, and post-judgment interest; and

5.     Such other and further relief as the Court may deem necessary or appropriate.

Dated: March 6, 2026        **IVIE McNEILL WYATT PURCELL & DIGGS**

                **By:**    ***/s/ Laura N. James***
                      **RODNEY S. DIGGS, ESQ.**
                      **LAURA N. JAMES, ESQ.**
                      Attorneys for Plaintiff,
                      **EDMOND LAURENT**